**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

CAPITOL SPECIALTY INSURANCE
CORPORATION,

        Plaintiff,

v.                                                                            Civ. No. 12-01299 MCA/LAM

SOUTHWEST CLUBS, INC.; 6001, INC.,
d/b/a TD'S NORTH; NC ROPERTIES LLC;
HTR LLC; PRISCILLA THREADGILL,
Individually and as Personal Representative
of the Wrongful Death Estate of JOSEPH
THREADGILL; DAVID THREADGILL
and DANIELLE THREADGILL,

        Defendants,

and

SOUTHWEST CLUBS, INC.; 6001, INC.,
d/b/a TD'S NORTH; NC PROPERTIES LLC;
HTR LLC,

        Counterclaimants,

v.

CAPITOL SPECIALTY INSURANCE
CORPORATION,

        Counter-Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on the Motion and Memorandum in Support of

Defendant Southwest Clubs, Inc., 6001, Inc. d/b/a TD'S North ("TD's"), NC Properties, LLC, and

HTR, LLC's ("Insured Parties") Motion to Stay Proceedings ("Motion to Stay") [Doc. 23], the

Insured Defendants' Motion for Leave to File Surreply in Opposition to

Plaintiff/Counterdefendant Capitol's Motion for Summary Judgment and Memorandum in Support ("Motion to File Surreply") [Doc. 42], the Plaintiff/Counterdefendant Capitol's Motion for Summary Judgment ("Motion for Summary Judgment") [Doc. 31], the Defendants/Counterclaimants' Unopposed Motion to Supplement Response to Plaintiff/Counterdefendant Capitol Specialty's Motion for Summary Judgment ("Motion to Supplement") [Doc. 38], and the Defendants/Counterclaimants' Second Motion to Supplement Response to Plaintiff/Counterdefendant Capitol Specialty's Motion for Summary Judgment ("Second Motion to Supplement Response") [Doc. 51].   The Court, having considered the motions, briefs, and relevant law, and being otherwise fully informed, finds that the Motion to Stay is not well taken and will be denied, the Motion to File Surreply is well taken and will be granted, the Motion for Summary Judgment is not well taken and will be denied, the Motion to Supplement is moot and will be denied, and the Second Motion to Supplement Response is moot and will be denied.

## BACKGROUND[1]

The parties dispute whether Plaintiff Capitol Specialty Insurance Corporation ("Capitol") is required to defend the Insured Parties in, and indemnify the Insured Parties from damages sustained as a result of, an underlying wrongful death litigation in state court (the "Underlying Action").[2]   The gravamen of the complaint ("Underlying Complaint") filed in the Underlying

---

[1]   Except where otherwise noted, the following facts are undisputed.

[2]   The underlying tort action is entitled *Priscilla Threadgill et al. v. Thomas Hancock et al.*, Thirteenth Judicial District Court, County of Sandoval, State of New Mexico, Case No. D-1329-CV-2012-02435.   TD's, NC Properties, LLC, and HTR, LLC are defendants in the underlying tort action along with Thomas Hancock.   [Doc. 3-2].

2

Action is that Thomas Hancock, a patron of Defendant TD's, fatally shot Joseph Threadgill, an employee working as a bouncer for TD's.

I.   <u>The Parties</u>.

Capitol is an insurance company that provides surplus lines insurance.   [Doc. 32, ¶ 1, at 2]. Defendant Southwest Clubs, Inc. is the named insured in a Commercial General Liability ("CGL") insurance policy identified as Policy Number PR00212494-02 ("the Policy") issued by Capitol for the relevant period from November 22, 2010, to November 22, 2011.   [*Id.*, ¶ 2, at 2].   Defendant TD's is listed as a named insured in the Policy and Defendants NC Properties, LLC and HTR, LLC are listed as additional insureds in the Policy.   [*Id.*].

Capitol is defending the Insured Parties in the Underlying Action pursuant to a reservation of rights.   [Doc. 23 at 4].   Capitol filed its complaint in this case on December 14, 2012, seeking a declaration that it has no duty to defend or indemnify the Insured Parties for the claims asserted in the Underlying Action.   [Doc. 13, ¶¶ 24, 35].

II.   <u>Assault and Battery Coverage</u>.

Associated Insurance Professionals ("AIP"), a licensed surplus lines insurance broker located in Albuquerque, New Mexico, assisted the Insured Parties in obtaining liability and property damage coverage.   [Doc. 36-1, ¶¶ 1, 3].   Obtaining liability coverage for assault and battery was an important feature of any liability policy for the Insured Parties, and AIP would not have placed a liability policy for the Insured Parties unless the policy provided meaningful coverage for assault and battery incidents on the Insured Parties' club premises.   [Doc. 36 at 10; Doc. 36-1, ¶ 6].

In 2008, while securing insurance for the Insured Parties, AIP obtained a quote from

Capitol for CGL and property coverage. [Doc. 36 at 10]. Capitol quoted the 2008 policy through Axiom Insurance Managers. [*Id.*]. Capitol's original quote contained no assault and battery coverage. [*Id.*]. When AIP specifically requested that Capitol include assault and battery coverage, Capitol added the coverage by including endorsement form AXI 114 (0707). [*Id.*] The binder letter issued by Capitol on November 17, 2008, indicates that Capitol would be including form AXI 114, entitled "ASSAULT & BATTERYCOVERAGE ENDORSEMENT," in the policy, [Doc. 36-1 at 13]; the policy that Capitol issued for the policy period from November 22, 2008, to November 22, 2009, included the assault and battery coverage contained in form AXI 114 (0707), [Doc. 36 at 11].

In 2009, AIP contacted Capitol requesting a quote for renewal of the policy, which Capitol provided. [*Id.*]. The November 6, 2009, binder letter indicates that Capitol would be including form AXI 114, entitled "ASSAULT AND BATTERY COVERAGE ENDORSEMENT—SUB-LIMIT OF LIABILITY," [Doc. 36-1 at 20] in the policy; the policy that Capitol issued for the policy period from November 22, 2009, to November 22, 2010, included the assault and battery coverage contained in form AXI 114 (0909), [*Id.* at 21; Doc. 36 at 11].

In 2010, AIP requested quotes from Capitol for renewal of the policy. [Doc. 36-1 at 21.] On November 19, 2010, Capitol's managing general agent, Axiom Insurance Managers, issued a binder letter for insurance coverage to the Insured Parties confirming that Capitol would provide assault or battery coverage in the amount of $1 million. [*Id.*, ¶ 17, at 5; *id.* at 24]. The November 19, 2010, binder letter provides "confirmation of coverage." [*Id.* at 23]. The November 19, 2010, binder letter indicates that "[i]n addition to the policy form, the following endorsements apply[,]" and lists "AXI 114 ASSAULT AND BATTERY COVERAGE ENDORSEMENT

4

SUB-LIMIT OF LIABILITY" as an applicable endorsement.   [*Id.* at 26; *id.* at 23-26; Doc. 36 at 11].   The quoted premium for the Policy covering the time period from November 22, 2010 to November 22, 2011, described in the binder letter is $104,450, of which Capitol charged $24,167 for assault and battery coverage.   [*Id.* at 11-12].

In 2008 and 2009, Capitol issued assault and battery coverage to the Insured Parties using two different Axiom AXI 114 forms.   For the policy effective November 22, 2008, to November 22, 2009, Capitol utilized Form AXI 114 (0707) and for the policy effective November 22, 2009, to November 22, 2010, Capitol utilized Form AXI 114 (0909).   [*Id.* at 16, 21].   The November 19, 2010, binder letter confirming the coverage for the November 22, 2010, to November 22, 2011, policy period did not specifically indicate which of the two Axiom AXI 114 forms Capitol was offering—*i.e.*, the 0707 version or the 0909 version.   [*Id.* at 23-27].   The binder letter simply lists "AXI 114 ASSAULT AND BATTERY COVERAGE ENDORSEMENT SUB-LIMIT OF LIABILITY" as an applicable endorsement.   [*Id.* at 26].   Axiom Form AXI 114 (0707), however, is captioned with a title similar to that referenced in the November 19, 2010, binder letter, whereas the title of Form AXI 114 (0909) differs from that referenced in the November 19, 2010, binder letter.   [*Id.* at 16, 21].   Specifically, Form AXI 114 (0707) is entitled, "ASSAULT & BATTERY COVERAGE ENDORSEMENT – Sub-limit of Liability," whereas Form AXI 114 (0909) is entitled, "AMENDMENT – ASSAULT OR BATTERY SUB-LIMIT."   [*Id.*].

Based upon the representations made in the November 19, 2010, binder letter, AIP agreed to all relevant contents of the binder on behalf of the Insured Parties.   [Doc. 36 at 11].   The Policy, however, that Capitol actually issued on November 22, 2010—which is the Policy at issue in this case—did not include either version 0707 or version 0909 of form AXI 114.   Instead, the

Policy for the 2010 to 2011 time period included a different assault and battery form, Form CGL 387 (04 10), entitled "ASSAULT OR BATTERY HAZARD LIMITED COVERAGE" ("CGL 387").  [Doc. 16, ¶ 21].

AIP has not, in 37 years of business, seen an insurer unilaterally change an endorsement from that which was represented in the insurer's binder letter.  [Doc. 36-1, ¶ 25].  Capitol did not disclose to the Insured Parties or AIP that it had failed to include form AXI 114 in the Policy for the 2010 to 2011 policy period and that it had instead substituted form CGL 387.  [Doc. 36 at 12].  AIP was unaware that Capitol had unilaterally switched the endorsements until after the plaintiffs in the Underlying Action filed their lawsuit.  [*Id.*].  Had AIP been aware of the switch, it would have advised the Insured Parties to reject the Policy.  [*Id.*].

III.    Policy Provisions.

The Policy obligates Capitol to defend the Insured Parties from suits seeking damages because of "bodily injury" caused by an "occurrence."  Specifically, the Commercial General Liability Coverage Form identified as CG 00 01 12 07 ("CGL Coverage Form"), which is contained in the Policy, provides in pertinent part:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.      Insuring Agreement**

**a.**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for

6

> "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.
>
> . . .
>
> **b.** This insurance applies to "bodily injury" and "property damage" only if:
>
> > **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"[.]

[Doc. 42-1, at 10]. The Policy defines a "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." [*Id.* at 13]. The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." [*Id.* at 14].

The CGL Coverage Form contained in the Policy further contains an exclusion which provides that expected or intended "bodily injury" shall be excluded from coverage, unless the "bodily injury" was "resulting from the use of reasonable force to protect persons or property":

> **SECTION I – COVERAGES**
>
> **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1.** **Insuring Agreement**
>
> > . . .
>
> **2.** **Exclusions**
>
> This insurance does not apply to:
>
> **a.** **Expected Or Intended Injury**
>
> > "Bodily injury" or "property damage" expected or

7

> intended from the standpoint of the insured.  This
> exclusion does not apply to "bodily injury" resulting
> from the use of reasonable force to protect persons or
> property.

[*Id.* at 1-2].

The parties dispute which one of three assault and battery endorsement forms—form AXI 114 (0909), form AXI 114 (0707), or form CGL 387 (04 10)—apply to the Policy.  Plaintiff contends that the endorsement contained in form CGL 387 applies to the Policy.   Form CGL 387 begins by setting forth various exclusions to the CGL Coverage Form.   [Doc. 32 at 4].  Specifically, paragraph A modifies the "Expected Or Intended Injury" exclusion found in Section I, 2 of the CGL Coverage Form.   [*Id.*].   Paragraph C adds the following additional exclusion to the Policy:

> **"Assault or Battery" Exclusion**
>
> This insurance does not apply to, nor shall we have a duty to defend, any claim or "suit" seeking damages or expenses due to "bodily injury," "property damage," "personal and advertising injury" or "injury", as defined respectively in the Commercial General Liability Coverage Form and Liquor Liability Coverage Form, arising out of, resulting from, or in connection with any of the following acts or omissions regardless of their sequence or any concurring cause.
>
> a.     "Assault or battery", whether or not caused or committed by or at the instruction of, or at the direction of or arising out of the negligence of you, any insured, any person or legal entity, or any causes whatsoever, except as provided in the Assault or Battery Limited Coverage described below."
>
> b.     The suppression or prevention of, or the failure to suppress or prevent "assault or battery" by you, any insured, or any person or legal entity;
>
> c.     The failure by you, any insured, or any legal entity to provide an environment safe from "assault or battery";

including but not limited to the failure to provide adequate security, or the failure to warn of the dangers of the environment which could contribute to "assault or battery" or failure to maintain the premises by you, any insured or any person or legal entity;

d.     The negligent employment, investigation hiring, suspension, training, retention, or any other employment related practice by any insured or any person or legal entity, including but not limited to contractors or subcontractors;

. . .

g.     The reporting to the proper authorities or failure to do so by you, any insured, or any person or legal entity; or

h.     Caused by, arising out of or resulting from the intoxication of any person.

[*Id.*].

Paragraph D of form CGL 387 states that the assault or battery hazard limited coverage is subject to exclusions, including those exclusions contained in paragraphs A, B, and C of form CGL 387 as well as those exclusion contained more generally in the Policy.   [*Id.*].   Specifically, paragraph D provides:

**ASSAULT OR BATTERY HAZARD LIMITED COVERAGE**
The following is added to **SECTION I – COVERAGES OF THE GENERAL LIABILITY COVERAGE FORM, AND SECTION I – LIQUOR LIABILITY COVERAGE of the LIQUOR LIABILITY COVERAGE FORM,** and is subject to the exclusions contained in those coverage forms and exclusions as added or amended by this endorsement[.]

[*Id.*].   Thereafter, paragraph D.1 of form CGL 387 provides that the assault or battery hazard limited coverage is subject to policy exclusions:

1.     **Assault or Battery Hazard Limited Coverage**

a.     We will pay those sums above the amount of the

> Assault or Battery Hazard Deductible that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", "personal and advertising injury", or "injury", as defined in the respective coverage forms, arising out of, resulting from, or in connection with damages included within the "assault or battery hazard" and not otherwise excluded.

[*Id.* at 4-5].   Paragraph D.3 of the CGL 387 form defines "assault or battery hazard" as follows:

> "Assault or battery hazard" means:
>
> a.    The use of reasonable force by any insured or sub-contractor working for an insured to protect persons or property for which an insured is legally liable, including reasonable force to eject or exclude any person from the insured's premises or restore order at the insured's premises; or
>
> b.    An "assault or battery" committed by a patron of an insured's business on another patrol for which an insured is legally liable.

[*Id.* at 5].

The Insured Parties argue that the Axiom endorsement applies to the Policy.   Axiom Form AXI114 (0909), which was part of the CGL policy Capitol issued to the Insured Parties for the policy period between November 22, 2009, to November 22, 2010, provides that it modifies the 2009 CGL coverage form CG 00 01 12 07 ("2009 CGL Coverage Form").   [Doc. 36-1 at 21]. Specifically, Form AXI114 (0909) modifies the "Expected Or Intended Injury" exclusion found in Section I, 2 of the 2009 CGL Coverage Form as follows:

> 1.    The following amends the COMMERCIAL GENERAL LIABILITY COVERAGE FORM.
>
>> a.    The following replaces the Expected Or Intended Injury exclusion in Section I, 2.   Exclusions:
>>
>>> "Bodily Injury" or "property damage" expected or

> intended from the standpoint of the insured. However, this exclusion does not apply to "bodily injury" or "property" damage included in the "assault or battery hazard."

[*Id.*].   Form AXI114 (0909) further amends Section V of the 2009 CGL Coverage Form, which includes definitions of terms used in the Policy, to include the following definition of "assault or battery hazard":   "'Assault or battery hazard' means the use of reasonable force to protect persons or property, including reasonable force to eject or exclude any person from the insured's premises or restore order at the insured's premises."   [*Id.*].

Axiom Form AXI114 (0707), which was part of policy Capitol issued to the Insured Parties during the policy period from November 22, 2008, to November 22, 2009, modifies the "Expected Or Intended Injury" exclusion found in Section I, 2 of the 2008 CGL coverage form ("2008 CGL Coverage Form") as follows:

> II.     Section 1 – Coverages, Coverage A, Bodily Injury & Property Damage Liability, Clause 2. Exclusions, is amended as follows:
>
> (A)     Paragraph (a), Expected or Intended Injury, is deleted in its entirety and replaced with the following:
>
> a.     Expected or intended injury
>
> "Bodily Injury" or "property damage" expected or intended from the standpoint of the insured.   However, this exclusion does not apply to "bodily injury" or "property" damage included in the "assault and battery hazard".

[Doc. 36-1 at 16].   Form AXI114 (0707) further amends Section V of the CGL Coverage Form, which includes definitions of terms used in the Policy, to include the following definition of

"assault or battery hazard":   "'Assault and battery hazard' includes all 'bodily injury' and 'property damage' resulting from the use of reasonable force to protect persons or property, including reasonable force or violence used to eject or exclude any person from the insured's premises or restore order at the insured's premises."   [*Id.*].

IV.   <u>Underlying Action</u>.

The Underlying Complaint alleges that Thomas Hancock was a patron at TD's the morning of August 27, 2011, that while at TD's Hancock started a fight with other patrons, and that TD's security personnel then ejected Hancock and escorted him to a bench outside of the premises. [Doc. 3-1, ¶¶ 23, 27, 28, 30].   The Underlying Complaint alleges that Hancock resisted ejection, which resulted in the further use of force to remove Hancock from the interior of the premises. [*Id.* ¶ 29].   The Underlying Complaint alleges that other patrons struck Hancock while he was outside TD's and that after the foregoing events occurred, Hancock retrieved two handguns from his car and fatally shot Joseph Threadgill, a bouncer employed at TD's.   [*Id.* ¶¶ 17, 32, 46].

The Underlying Complaint alleges a negligence claim (Count I) and an intentional assault and battery claim (Count II) against Hancock.   [*Id.* at 10, 11].   The Underlying Complaint further contains a claim for negligence/premises liability (Count III) and a negligent entrustment claim (Count IV) against NC Properties.   [*Id.* at 11, 14].   The Underlying Complaint also contains a claim for negligent entrustment (Count VI) and statutory dram shop (Count V) against HTR (Count VI).   [*Id.* at 15, 17].   The Underlying Complaint further alleges a *Delgado v. Phelps Dodge Chino, Inc.* claim against TD's (Count VIII).   [*Id.* at 22].

In support of these claims, the Underlying Complaint generally alleges that the policies and training were inadequate or nonexistent regarding handling intoxicated and violent patrons, [*id.* ¶¶

43, 44, 48, 49], that the policies prohibited TD's employees from calling the police for help dealing with intoxicated and violent patrons to prevent the shooting, [*id.* ¶¶45, 52, 53], that TD's failed to provide decedent with assistance that would have prevented his death, [*id.* ¶ 50], and that TD's failed to provide decedent with proper equipment in order to safely escort or handle violent patrons, [*id.* ¶ 51].   The Underlying Complaint also alleges that the shooting was caused by Hancock's intoxication and by failure to provide training as to sales to intoxicated persons and the selling of intoxicating liquors.   [*Id.* ¶¶ 23, 27, 28, 33, 41-44, 60, 89-94].   The Underlying Complaint further alleges, as an alternative to intoxication, that Hancock may have been "intoxicated *or* impaired after sustaining numerous blows," which "may have caused him to initially randomly open fire in a negligent and reckless manner from within his vehicle and outside his vehicle at or in the direction of the Decedent."   [*Id.* ¶ 60 (emphasis added)].

With respect to the negligence/premises liability claim against Defendant NC Properties, the Underlying Complaint alleges that NC Properties owed a duty to decedent to use due care to keep the premises safe, to provide security and proper lighting, and to warn and provide safety instructions.   [*Id.* ¶¶ 71-73].   The Underlying Complaint further alleges that NC Properties breached the aforementioned duties by failing to warn decedent of the unreasonably dangerous condition it created, by failing to provide security guards and implement security measures, by failing to provide adequate lighting, by failing to assess security needs, and by failing to adopt and enforce safety procedures that would have prevented decedent's death.   [*Id.* ¶¶75(B)-(F)].   With respect to the negligent entrustment claim, the Underlying Complaint alleges that NC Properties "knew or should have known that after numerous police reports, dispatches, or reports from various government agencies that DEFENDANT TD'S was not operating [in] a safe and prudent

manner . . . ."   [*Id.* ¶ 83].   With respect to the negligent entrustment claim against HTR, LLC, the Underlying Complaint alleges that Defendant HTR "knew or should have known that after numerous incidents, reports, or police reports from various government agencies that DEFENDDANT TD's was not operating [in] a safe and prudent manner . . . ."   [*Id.* ¶ 104].

With respect to the *Delgado* claim against TD's, the Underlying Complaint alleges that TD's actions constituted willful behavior pursuant to the exception to the New Mexico Workers' Compensation Act, N.M. Stat. Ann. § 52-1-9, set forth in *Delgado v. Phelps Dodge Chino, Inc.*, 34 P.3d 1148 (2001).   [Doc. 3-1, ¶¶ 119-28].   The Underlying Complaint also alleges that "TD's reasonably expected that its actions and omissions would result in the injury," [*id.* ¶ 123], and that "TD'S intentionally refused or willful[ly] failed to provide assistance to the Decedent," [*id.* ¶ 39].

## STANDARDS

I.      Discretionary Jurisdiction Under the Federal Declaratory Judgment Act.

The federal Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration."   28 U.S.C. § 2201.   While this statute vests the federal courts with the power and competence to issue a declaration of rights, *see Public Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962) (per curiam), the question whether this power should be exercised in a particular case is vested in the sound discretion of the district courts.   *See id.*; *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995) ("district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites"); *see also Sierra Club v. Yeutter*, 911 F.2d 1405, 1420 n.8 (10th Cir. 1990).   When a suit involving the same

issues is pending in state court, a federal court should avoid "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation." *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 495 (1942) (explaining that "[o]rdinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties" and indicating that a court should determine whether the lawsuit "can be better settled in the proceeding pending in the state court").

In *State Farm Fire & Casualty Co. v. Mhoon*, the Tenth Circuit adopted a five-factor test for evaluating whether a district court should exercise its discretionary jurisdiction over a declaratory judgment action. *See* 31 F.3d 979, 983 (10th Cir. 1994). These factors include (1) whether a declaratory action would settle the controversy; (2) whether it would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to res judicata"; (4) whether use of a declaratory action would increase friction between federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective. *Id.*

In *Mhoon*, the insured sought coverage for its defense and indemnification in an underlying lawsuit arising from the insured's shooting of his victim. *See id.* at 981. The victim and his wife filed suit in state court, alleging that the insured committed intentional torts against them. *See id.* at 982. The plaintiff-insurer agreed to defend its insured against the underlying lawsuit, "but only under a reservation of rights which left [the insurer] free to seek a judicial determination of its contractual obligations to [the insured]." *Id.* The insurer filed a declaratory

judgment action under 28 U.S.C. Section 2201 and sought a declaration that the policy did not cover its insured, because he shot the victim intentionally. *See id*. "Though the state tort suit between [the insured] and [the victim] was still in progress at the time, the federal district judge agreed to hear [the insurer's] declaratory action." *Id.* In *Mhoon*, the insured argued that when the federal court "took the case '[t]he State Court proceeding [had] not yet determined whether the act [was] intentional.'" *Id.* at 983. The insured maintained that "the U.S. District Court . . . put [itself] in the position of dictating to the State Court that the act [was] intentional or making the statement that regardless of the factual determination in State Court, the federal court makes its own determination on the issue." *Id.* The insured claimed that "those factual issues should be determined by State Court, not by Federal Court." *Id*.

Our Tenth Circuit held that the federal district court did not abuse its discretion by hearing the case, because "a live need for declaration of the insurer's rights and duties did, in fact, exist." *Id.* at 983-84. The Tenth Circuit based its decision on the following:  (i) neither party suggested that the insurer could have been or was a party to the state tort action, "thus obviating any need for an independent declaratory action and providing a simpler and more efficient resolution of [the insurer's] obligations towards [its insured]"; (ii) there was substantial interest in deciding the question of duty to the insured without delay; and (iii) the federal district court was an available forum to the insurer. *Id.* at 984. The Court noted that the federal court's exercise of jurisdiction did not unduly interfere with the state proceeding. *See id.* "The duty to defend issue[] involved only an examination of the state court complaint to see if its allegations of fact triggered the duty. Determining that duty involved no matter, factual or legal, at issue in the state case." *Id.* The Tenth Circuit explained that "[it was] not a case, therefore, where the district

16

court found a material factual dispute and proceeded to resolve it in the face of ongoing state proceedings on the same subject."   *Id.*   That scenario would have presented a different issue, especially if the state proceedings were quite far along.   *See id.*   The Court opined that under those circumstances, a stay or dismissal might be proper.   *See id.*

II.   <u>Leave to File Sur-Reply</u>.

The Local Rules of Civil Procedure for the District of New Mexico provide that leave of court is required to file a sur-reply.   *See* D.N.M.LR-Civ. 7.4(b).   Courts generally do not grant a party leave to file a sur-reply unless the opposing party's reply brief includes new information that the responding party needs an opportunity to address.   *See C.T. v. Liberal Sch. Dist.*, 562 F. Supp. 2d 1324, 1329 n.1 (D. Kan. 2008) ("[a] surreply will not be allowed unless the reply of the party filing the initial motion contained new information which the responding party needs an opportunity to address") (citation omitted); *see also Plant Oil Powered Diesel Fuel Sys., Inc. v. ExxonMobil Corp.*, No. CIV 11-0103 JB/WPL, 2012 WL 1132527, at *15 (D.N.M. Mar. 22, 2012) (sur-reply allowed when a party raises new arguments in a reply, because of the "inequity of a court considering arguments . . . raised for the first time in a reply") (internal quotation marks and citation omitted).

III.   <u>Summary Judgment</u>.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."   Fed. R. Civ. P. 56(c); *see Jones v. Kodak Med. Assistance Plan*, 169 F.3d 1287, 1290 (10th Cir. 1999).   Under Rule 56(c), "the mere existence of some alleged factual dispute between

the parties will not defeat an otherwise properly supported motion for summary judgment."
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).   Rather, "[o]nly disputes over facts
that might affect the outcome of the suit under the governing law will properly preclude the entry
of summary judgment."   *Id.* at 248.

Initially, the moving party bears the burden of demonstrating the absence of a genuine
issue of material fact.   *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir.
1993) (citations omitted).   The moving party need not negate the nonmovant's claim, but rather
must show "that there is an absence of evidence to support the nonmoving party's case."   *Celotex
v. Catrett*, 477 U.S. 317, 325 (1986).   Once the moving party meets its initial burden, the
nonmoving party must show that genuine issues remain for trial "as to those dispositive matters for
which it carries the burden of proof."   *Applied Genetics Int'l Inc. v. First Affiliated Secs., Inc.*, 912
F.2d 1238, 1241 (10th Cir. 1991) (citation omitted).   The nonmoving party cannot rely upon
conclusory allegations or contentions of counsel to defeat summary judgment, *see Pueblo v.
Neighborhood Health Ctrs., Inc.*, 847 F.2d 642, 649 (10th Cir. 1988), but rather must "go beyond
the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and
admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"
*Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

Upon a motion for summary judgment, the Court "must view the facts in the light most
favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be
drawn from the evidence."   *Kaus v. Standard Ins. Co.*, 985 F. Supp. 1277, 1281 (D. Kan. 1997),
*aff'd*, 162 F.3d 1173 (10th Cir. 1998).   If there is no genuine issue of material fact in dispute, then
a court must next determine whether the movant is entitled to judgment in its favor as a matter of

law.   *See, e.g.*, *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996); *Celotex*, 477 U.S. at 322.

## DISCUSSION

I.    <u>Motion to Stay</u>.

The Insured Parties move the Court to stay the proceedings in this case pending resolution of the Underlying Action.   The Insured Parties argue that the factors articulated by the Tenth Circuit in *State Farm Fire & Casualty Co. v. Mhoon*, 31 F.3d 979 (10th Cir. 1994), weigh in favor of granting a stay.   In *Mhoon*, the Tenth Circuit adopted a five-factor test for evaluating whether a district court should exercise its discretionary jurisdiction over a declaratory judgment action. *See id.* at 983.   These factors include (1) whether a declaratory action would settle the controversy; (2) whether it would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to res judicata"; (4) whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.   *Id.*

The Court concludes that the *Mhoon* factors do not weigh in favor of staying this proceeding.   The Court further concludes that, consistent with the Supreme Court's instruction in *Brillhart*, this lawsuit cannot be better settled in the Underlying Action.   *Cf. Brillhart v. Excess Insurance Co. of Am.*, 316 U.S. 491, 495 (1942).   Thus, the Court will deny the Motion to Stay.

With respect to the first and second *Mhoon* factors, *i.e.*, whether a declaratory action would settle the controversy and whether it would serve a useful purpose in clarifying the legal relations at issue, the Court concludes that the declaratory judgment action would settle the immediate controversy between the parties of whether Capitol has a duty to defend the Insured Parties in the Underlying Action and that the declaratory action therefore would clarify the legal relations at

19

issue. *See Mid-Continent Cas. Co. v. Village at Deer Creek Homeowners Ass'n*, 685 F.3d 977, 982 n.3 (10th Cir. 2012) (noting that "[s]ome courts have resolved the first two *Mhoon* factors in favor of exercising jurisdiction when a declaratory judgment action would settle the immediate controversy between the parties to the action") (citation omitted).   The declaratory judgment action also is capable of settling the controversy whether Capitol has a duty to indemnify the Insured Parties, although this question cannot be answered until the Underlying Action concludes. *See Valley Improvement Ass'n v. U.S. Fidelity & Guar. Corp.*, 129 F.3d 1108, 1126 (10th Cir. 1997) ("We have held, as have other courts, that the duty to indemnify must be determined based on the facts as ultimately determined in the litigation against the insured.").   The Underlying Action, in contrast, would not settle the question of either Capitol's duty to defend or its duty to indemnify the Insured Parties for damages arising out of the Underlying Action.   *See Mid-Continent Cas.*, 685 F.3d at 982 n.3 ("Especially relevant may be whether the state court action would necessarily resolve the issues in the declaratory judgment action.").   Thus, the first two *Mhoon* factors weigh in favor of the Court's exercise of discretionary jurisdiction over this declaratory judgment action.

The Court is not persuaded to hold otherwise by the Insured Parties' argument that "[t]his action would not settle the controversy or clarify the legal relations at issue because there are factual issues that need to be determined prior to this Court's decision."   [Doc. 23 at 11].   The Insured Parties maintain that "[t]he question [at issue in factor one] is not whether a federal declaratory action will resolve the issues presented in that [declaratory] action but whether the declaratory action would 'dispose of all of the claims in the [underlying] state court case.'"   [*Id.* at 12 (quoting *Mid-Continent Cas.*, 685 F.3d at 982)].   In support of this argument, the Insured Parties cite *Mid-Continent Casualty Co. v. Village at Deer Creek Homeowners Association*, in

20

which the Tenth Circuit explained that the district court concluded that "the first two [*Mhoon*]

factors weighed against exercising jurisdiction because the declaratory judgment action '[w]ould

not dispose of all of the claims in the state court case."   685 F.3d at 982.   The appellant-insurer in

*Mid-Continent* argued that "this conclusion constituted an abuse of discretion because, correctly

construed, the first two *Mhoon* factors permit the district court to consider only whether the federal

declaratory judgment action would resolve the issues presented in the [declaratory] action itself."

*Id.*   The Tenth Circuit rejected the insurer's argument to the extent the insurer sought to limit the

inquiry only to whether the federal declaratory action would resolve the issues presented in the

federal action itself.   *See id.*   Conversely, however, the Tenth Circuit did not adopt the alternative

standard applied by the *Mhoon* district court—*i.e.*, whether the federal declaratory action would

dispose of all the issues in the state court litigation—as the only relevant inquiry.   *See id.*   Rather,

the Tenth Circuit endorsed the use of a flexible standard dependent upon the facts of a particular

case.   *See id.* at 982 n.3.   Our Tenth Circuit explained:

> Some courts have resolved the first two *Mhoon* factors in favor of
> exercising jurisdiction when a declaratory judgment action would
> settle the immediate controversy between the parties to the
> action.  *See, e.g.*, *N.W. Pac. Indem. Co. v. Safeway, Inc.*, 112 F.
> Supp. 2d 1114, 1120 (D. Kan. 2000).  Other courts have resolved
> the first two *Mhoon* factors against exercising jurisdiction when the
> declaratory judgment action would leave unresolved other, related
> issues in parallel state court proceedings.  *See, e.g.*, *Qwest
> Communications Int'l, Inc. v. Thomas*, 52 F. Supp. 2d 1200, 1207
> (D. Colo. 1999).  Relying on a case from the Sixth Circuit,
> Mid-Continent argues these two approaches constitute a "split of
> authority"       as       to       the       scope       of       the       first
> two *Mhoon* factors.  *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d
> 546, 555 (6th Cir. 2008).  As the Sixth Circuit has itself
> acknowledged, however, the seemingly differing standards applied
> in different cases "might . . . be explained by their different factual
> scenarios."  *Id.*
>
> In some cases, the likelihood a declaratory judgment will resolve the

immediate dispute between the parties may tip the scales in favor of exercising jurisdiction.   In others, the existence of outstanding claims in a parallel state court action may counsel a different conclusion.   Especially relevant may be whether the state court action would necessarily resolve the issues in the declaratory judgment action.

*Id.*

Consistent with the flexible approach endorsed by our Circuit in *Mid-Continent*, the Court concludes that the facts of this case do not counsel in favor of analyzing the first *Mhoon* factor in terms of whether the declaratory judgment action would dispose of the claims in the Underlying Action in state court.   The federal and state actions are not parallel litigations seeking to determine the scope of coverage under the Policy; rather the federal declaratory action arises out of the Underlying Action in state court, *i.e.*, the Insured Parties contend that the Underlying Action involves an "occurrence" within the meaning of the Policy giving rise to coverage under the Policy's duty to defend and indemnify provisions.   Thus, because the Underlying Action does not address Capitol's insurance coverage duty vis-a-vis its insured, but rather involves third-party claims seeking to impose tort liability on the insureds, the federal declaratory judgment action regarding the question whether Capitol has a duty to defend or indemnify the Insured Parties could never dispose of the underlying third-party tort claims that give rise to the insurance coverage questions.   Moreover, although the Insured Parties contend that the Court should not entertain a declaratory judgment action when the "'same fact-dependent issues are likely to be decided in another pending [state] proceeding,'" [Doc. 23 at 13 (quoting *St. Paul Fire & Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1170 (10th Cir. 1995)], as described herein, *see infra* at 25-26, the Court does not believe the issues in this litigation are dependent upon disputed factual issues in the Underlying Action.   Thus, in this context, the Court declines to consider—in evaluating the first

and second *Mhoon* factors—whether the declaratory judgment will dispose of the claims in the Underlying Action.

With respect to the third *Mhoon* factor, *i.e.*, whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to res judicata," the Court concludes that this factor likewise weighs in favor of the Court's exercise of jurisdiction. The Insured Parties make no argument that Plaintiff is using the declaratory remedy for the purpose of procedural fencing or to secure a res judicata judgment. Indeed, in their reply in support of their Motion to Stay, the Insured Parties specifically concede that they "did not argue in their motion, nor do they argue here, that Capitol is engaged in procedural fencing." [Doc. 27 at 2 n.2]. There is no other litigation involving Capitol's duty to defend or indemnify the Insured Parties pending against which Capitol is racing to secure a res judicata judgment and the Court perceives no other evidence that Capitol filed its complaint for declaratory judgment for the purpose of procedural fencing.

With respect to the fourth *Mhoon* factor, *i.e.*, whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction, the Court concludes that this consideration also weighs in favor of the Court's exercise of jurisdiction. The Insured Parties argue that the Court should stay the federal proceeding because determination of the coverage issues would encroach upon state jurisdiction. First, the Insured Parties argue that in New Mexico, it is "well-settled [sic] that the determination of the duty to defend should generally be made in the primary action." [Doc. 23 at 15]. Second, the Insured Parties maintain that "facts that will inform coverage" will be decided in the Underlying Action and that this "supports staying this action to allow such factual development to occur." [Doc. 23 at 16]. Third, the Insured Parties contend that "allowing this action to proceed

poses not only the danger of inconsistent results and wasteful duplication of judicial resources, but it would force the Insured parties to litigate the same factual issues on two fronts."   [Doc. 23 at 18].   The Court is not persuaded by these arguments.

In New Mexico, in disputes stemming from insurance contracts, the "duty to defend arises out of the nature of the allegations in the complaint," *Miller v. Triad Adoption & Counseling Servs., Inc.*, 65 P.3d 1099, 1103 (N.M. Ct. App. 2003), and is determined "by comparing the factual allegations in the complaint with the insurance policy," *Lopez v. N.M. Pub. Sch. Ins. Auth.*, 870 P.2d 745, 747 (N.M. 1994).   If a complaint "states facts that bring the case within the coverage of the policy," then the complaint triggers the duty to defend.   *Bernalillo County Deputy Sheriffs Ass'n v. County of Bernalillo*, 845 P.2d 789, 791 (N.M. 1992).   "If the allegations of the complaint or the alleged facts tend to show that an occurrence comes within the coverage of the policy, the insurer has a duty to defend regardless of the ultimate liability of the insured."   *Miller*, 65 P.3d at 1103.

The Insured Parties claim that the "duty to defend should generally be made in the primary action," [Doc. 23 at 15], and they cite the Supreme Court of New Mexico's decision in *Lopez v. New Mexico Public School Insurance Authority*, 870 P.2d 745, 748 (N.M. 1994), in support of this contention.   In *Lopez*, however, the state Supreme Court did not hold, as the Insured Parties claim, that the duty to defend generally should be decided in the underlying action.   Rather, the *Lopez* court held that, when the allegations of the complaint do not establish the inapplicability of an exclusion as a matter of law, "a determination of whether an exclusion relieves an insurer from a duty to defend must be made in the primary lawsuit, and not in an action for declaratory judgment, because it is a factual question."   *Id.*; *see also Foundation Reserve Ins. Co. v. Mullenix*, 642 P.2d 604, 605-06 (N.M. 1982) (recognizing that an insurer cannot seek to establish in a declaratory

judgment action facts that are not pled in the underlying complaint or are contrary to the underlying complaint to relieve the insurer of its duty to defend pursuant to an exclusionary provision to an insurance contract and holding that, if a federal court cannot determine as a matter of law whether an exclusion applies based upon the allegations in the underlying compliant, the state court in the primary underlying action should make the factual determination whether the exclusion applies).  Here, Capitol argues, and the Court agrees, that the Court can decide the question of the duty to defend as a matter of law based upon the allegations in the Underlying Complaint.   The Court concludes that the holding of *Lopez* does not apply here.

The Court is likewise not persuaded by the Insured Parties' second and third arguments. The Insured Parties maintain that the underlying court will be deciding facts that inform the question of insurance coverage and that the federal court therefore should stay this case.   They further argue that if the Court does not issue a stay, there will be a risk of inconsistent results and that the Insured Parties will have to litigate the same factual issues on two fronts.   These arguments are premised on the belief that the insurance coverage determination involves a resolution of the same factual issues being litigated in the Underlying Action in state court.   This premise is faulty.

Capitol's Motion for Summary Judgment on the insurance coverage issue does not ask the Court to resolve any factual disputes at issue in the Underlying Action.   The relevant question regarding coverage in this Court is not based upon whether the underlying fact finder concludes that any given fact is true, *i.e.*, that Hancock was, for example, in actuality intoxicated, but rather depends upon whether the allegations in the Underlying Complaint, or the known but unpleaded facts, bring the case within the coverage of the policy or whether they demonstrate that coverage is excluded by virtue of the intoxication exclusion in CGL 387.   *See Am. Gen. Fire & Cas. Co. v.*

*Progressive Cas. Co.*, 1799 P.2d 1113, 1116 (N.M. 1990); *Bernalillo County Deputy Sheriffs Ass'n*, 845 P.2d at 791.   This latter coverage issue is a *question of law* that is decided on the basis of the pleadings and the known but unpleaded facts.   This question of law is not the equivalent of a conclusive factual finding ultimately *decided* by the underlying court.   Indeed, the Court's decision regarding the question of law could differ from the ultimate factual conclusion reached by the finder of fact in the Underlying Litigation.   While the Insured Parties point to authorities such as *Lopez*, which provide that a state court should decide disputed questions of *fact* in the primary litigation, they identify no authority, and this Court finds none, indicating that a federal court cannot decide the question of an insurer's duty to defend as a matter of *law* in a declaratory judgment action.   Thus, the Insured Parties will not be litigating factual issues on two fronts and the Court will not be deciding factual matters at issue in the Underlying Action, thereby risking inconsistent results.   Because there are no shared factual issues in dispute, the Court concludes that the Insured Parties have failed to demonstrate that the Court's discretionary jurisdiction over this declaratory action would increase friction between our federal and state courts or improperly encroach upon state jurisdiction.   *See State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983-84 (10th Cir. 1994) (rejecting the insured's argument that the federal court was increasing friction between the state and federal courts and encroaching upon state jurisdiction by deciding a factual issue in dispute in the primary state court tort action, because the federal district court did not resolve any factual issues in reaching its decision on the question of the insurer's duty to defend but rather decided only as a matter of law that the allegations in the complaint did not trigger the duty to defend); *Hartford Fire Ins. Co. v. Gandy Dancer,* LLC, No. No. CIV 10–0137 JB/RHS, 2011 WL 1336523, at *11-12 (D.N.M. Mar. 30, 2011) (holding that exercising jurisdiction over the insurance coverage action would not increase friction with the state court because the question

of duty to defend is answered as a matter of law by looking to the allegations of the underlying complaint and not by resolving any disputed issue of fact before the state court).

With respect to the fifth *Mhoon* factor, *i.e.*, whether there is an alternative remedy which is better or more effective, the Court concludes that this consideration weighs in favor of the Court's exercise of jurisdiction.   The Insured Parties argue that the state Underlying Action is the preferred forum for deciding the factual questions surrounding coverage and cite the District of New Mexico's decision in *Progressive Specialty Insurance Co. v. Thakur*, No. 06-CV-542, 2006 U.S. Dist. LEXIS 97895, at *8 (D.N.M. Nov. 14, 2006), in support of this claim.   [Doc. 23 at 18]. In *Thakur*, the federal district court held that the state action was a more effective alternative remedy than a federal action, because the court reasoned that "the state action will likely decide the rights of all interested parties, including the parties to the present action" and concluded that "such remedy necessarily is more comprehensive and cohesive."   *Id.*   *Thakur*, however, is distinguishable, because in *Thakur* the "state law suit raise[d insurance coverage] issues identical to [the insurer's] federal counterpart," whereas here, the Underlying Action does not address the questions of insurance coverage at issue in this federal suit, but rather only directly addresses the tort claims of the underlying plaintiffs that give rise to the coverage issues.   *Cf. id.* at *3 (explaining that the state and federal suits raised "identical" insurance coverage issues).   Because the Underlying Action will not decide the rights of Capitol or the Insured Parties regarding the question of insurance coverage, the Underlying Action cannot provide a comprehensive or cohesive remedy.   The Court concludes that *Thakur* does not compel a holding in the Insured Parties' favor.

The Court likewise is not persuaded by the Insured Parties' argument that the fifth factor weighs against the Court's exercise of discretionary jurisdiction, because the Underlying Action

involves the same factual questions at issue before this Court, and because staying this case and allowing the state court to decide the underlying fact issues will prevent the possibility of inconsistent findings in federal and state court.  [Doc. 27 at 12].  As this Court already has explained in the context of evaluating the fourth *Mhoon* factor, *see supra* at 25-26, the insurance coverage issue regarding the duty to defend here does not involve the same factual issues as those in the Underlying Action because the coverage question involves a determination as a matter of law and not an ultimate factual determination by a finder of fact.  Because the legal issues here differ from the factual issues in dispute in the Underlying Action, there is no possibility of inconsistent findings of fact.

The Court is not persuaded by the Insured Parties' arguments that the underlying state court proceeding is the preferred forum for resolving the issues in dispute in this federal proceeding.  To the contrary, the Court concludes that the state proceeding cannot be the preferred forum for resolving the issues in dispute in this federal declaratory action, because the legal questions at issue here are not before the state court.  Indeed, no issues of insurance coverage are pending before the state court.  For these reasons, the Court therefore concludes that the fifth *Mhoon* factor weighs in favor of hearing the declaratory judgment action now.

The Court has concluded that each of the *Mhoon* factors weighs in favor of the Court exercising its discretionary jurisdiction over Capitol's declaratory judgment action.  Moreover, the Court concludes that here, as in *Mhoon*, there is "a live need for declaration of the insurer's rights and duties," and a suit such as the one before this Court would be required at some point in a case other than the state tort action.  31 F.3d at 983-84.  Capitol is not a party to the state court tort action, and could not have been, because the duty to indemnify the Insured Parties for damages sustained as a result of the Underlying Action must be decided after the Underlying Action is

28

resolved.   Thus, there is a real need for a forum in which Capitol can resolve its obligations towards the Insured Parties.   *Cf. id.* at 984.   Finally, the Court notes that a substantial interest exists in deciding the question of duty to defend without undue delay.   *Cf. id.*   For all of these reasons, the Court exercises its discretionary jurisdiction to hear Capitol's declaratory judgment claim and therefore will deny the Insured Parties' Motion to Stay.

II.        <u>Motion to File Surreply</u>.

The Insured Parties ask the Court to allow them to file a surreply in opposition to Capitol's Motion for Summary Judgment on the ground that Capitol's reply brief asks the Court for the first time to determine as a matter of law that Capitol has no duty to defend the Insured Parties even if the Axiom form AXI 114 (0909) applies.   In the alternative, the Insured Parties ask the Court to exclude Capitol's new basis for granting summary judgment in its favor.   [Doc. 42 at 1-2].   In response, Capitol argues that it was the Insured Parties—and not Capitol—who in their answer brief first raised the issue whether coverage exists under the Axiom form, and that Capitol merely responded in its reply brief to the Insured Parties' argument.

The Local Rules of Civil Procedure for the District of New Mexico provide that leave of court is required to file a sur-reply.   *See* D.N.M.LR-Civ. 7.4(b).   Courts generally do not grant a party leave to file a sur-reply unless the opposing party's reply brief includes new information that the responding party needs an opportunity to address.   *See C.T. v. Liberal Sch. Dist.*, 562 F. Supp. 2d 1324, 1329 n.1 (D. Kan. 2008) (citation omitted); *see also Plant Oil Powered Diesel Fuel Sys., Inc. v. ExxonMobil Corp.*, No. CIV 11–0103 JB/WPL, 2012 WL 1132527, at *15 (D.N.M. Mar. 22, 2012) (internal quotation marks and citation omitted).   Capitol's opening brief in support of its Motion for Summary Judgment advances the argument that Capitol was not obligated to defend the Insured Parties in the Underlying Action because the terms of CGL 387 expressly preclude

29

coverage.   Capitol does not argue in its opening brief that the terms of AXI 114 preclude coverage.   In their response to the motion, the Insured Parties maintain that the Court should deny summary judgment in part because a question of fact exists with respect to whether the endorsement CGL 387 applies or whether Axiom endorsement AXI 114 applies.   The Insured Parties, however, do not limit their presentation of facts and argument to the question of which form applies; rather, they also contend that Capitol has a duty to defend the Insured Parties in the Underlying Action pursuant to the terms of form AXI 114.   This latter argument is beyond the scope of Capitol's Motion for Summary Judgment, because Capitol's motion and opening brief seek only a determination as a matter of law that Capitol has no duty to defend the Underlying Action pursuant to the terms of form CGL 387.   The Insured Parties thus opened the door for Capitol to respond to their argument regarding coverage under the terms of form AXI 114.

Although the Court agrees that it was the Insured Parties who first injected the issue whether coverage exists under Axiom form AXI 114, the Court is not persuaded by Capitol's argument that the Insured Parties have waived their right to *respond* to Capitol's argument in its reply regarding form AXI 114.   Capitol cites *Brashear v. Packers*, 883 P.2d 1278 (N.M. 1994), in support of its position.   In *Brashear*, the New Mexico Supreme Court held that when a party raises an argument in an answer brief, even though the argument has not been raised in the brief in chief, the movant—here Capitol—has the right to respond to that new argument in its reply brief. *See id.* at 1280 (citing *Bennett v. Tucker*, 827 F.2d 63, 70 n. 2 (7th Cir.1987); *North v. Madison Area Ass'n for Retarded Citizens-Developmental Ctrs. Corp.*, 844 F.2d 401, 405 n. 6 (7th Cir.1988)).   While *Brashear* dictates that Capitol may properly respond to the argument the Insured Parties first raised in their response, it is a separate question whether the Court should grant a non-movant such as the Insured Parties the right to file a sur-reply when a movant such as

Capitol seeks to add an additional basis for summary judgment by advancing that basis for the first time in its reply brief.

In deciding this separate question, the Court notes that the Insured Parties do not object per se to the inclusion of Capitol's new basis for summary judgment.   Rather, the Insured Parties ask the Court to allow them to respond to the new basis in a sur-reply and only in the alternative seek to exclude the portions of Capitol's reply arguing that there is no coverage under the Axiom form. The Court therefore will construe Capitol's Motion for Summary Judgment expansively to include the additional basis for summary judgment raised by Capitol in its reply brief.   The Court, however, also will grant the Insured Parties' Motion to File Surreply, because the scope of the original Motion for Summary Judgment was limited only to the question whether coverage existed under form CGL 387 and not whether coverage existed under form AXI 114.   Although the Insured Parties prepared a brief discussion of the question whether coverage exists under form AXI 114 in their response, the Insured Parties did not have an opportunity to *respond* to the arguments that Capitol—the moving party—made in its reply seeking judgment as a matter of law that no coverage exists under Axiom form AXI 114.   Fairness dictates that the Insured Parties, as the non-moving parties, have the opportunity to respond to Capitol's arguments.[3]

III.    Motion for Summary Judgment.

In its Motion for Summary Judgment, Capitol asks the Court to declare as a matter of law that Capitol does not have a duty to defend or indemnify the Insured Parties for damages or other loss arising out of the Underlying Action because the terms of the CGL 387 endorsement preclude

---

[3]    In addition to granting the Insured Parties' Motion to File Surreply, the Court also notes that it granted Capitol's request to file a response to that surreply.   In its answer brief to the Motion to File Surreply, Capitol asks the Court to allow it to file a five-page response to the Insured Parties' sur-reply.   Although Capitol filed no motion seeking leave of court to file a response, the Court nonetheless granted Capitol's request [Doc. 56].

coverage.   Capitol also argues that even if Axiom form AXI 114 applies instead of form CGL 387, the terms of AXI 114 likewise preclude coverage.   The Insured Parties and the Threadgills[4] disagree, arguing that the Court should deny summary judgment on the ground that the terms of CGL 387 preclude coverage because a material question of fact exists with respect to whether CGL 387 is part of the Policy, and because, even if CGL 387 applies, the allegations of the Underlying Complaint, or the known but unpleaded facts, tend to show an occurrence that falls within the coverage of the Policy.   The Insured Parties and the Threadgills further contend that Axiom form AXI 114 applies—not form CGL 387—and that the allegations of the Underlying Complaint, or the known but unpleaded facts, tend to show that the Capitol has a duty to defend the Underlying Action pursuant to the terms of AXI 114.

A.   <u>A Material Dispute of Fact Exists Precluding Summary Judgment Regarding Whether Capitol Has a Duty to Defend the Insured Parties Pursuant to Endorsement CGL 387.</u>

Capitol asks the Court to declare as a matter of law that Capitol does not have a duty to defend or indemnify the Insured Parties for damages or other loss arising out of the Underlying Action because the terms of the CGL 387 endorsement preclude coverage.   Specifically, Capitol argues that the "Exclusions A, B, and C of [CGL 387] exclude each of the specific claims asserted by [the] Threadgills."   [Doc. 32 at 11].   Capitol further argues that the assault and battery hazard provides limited coverage to the Insured Parties, but only when the claims fit within the Policy's definition of the "assault or battery hazard" set forth in CGL 387.   Capitol maintains that the allegations in the Underlying Complaint do not fall within this definition.   The Insured Parties and

---

[4]   Defendants Priscilla Threadgill, individually and as personal representative of the wrongful death estate of Joseph Threadgill, David Threadgill, and Danielle Threadgill (collectively, the "Threadgills") join the Insured Parties' response to the Motion for Summary Judgment as well as the Insured Parties supplemental response to the Motion for Summary Judgment.   [Docs. 37, 41].

the Threadgills contend that the Court should reject each of these arguments, because they are premised on the erroneous assumption that endorsement CGL 387 is applicable to the Policy. The Insured Parties and the Threadgills further maintain that they have raised a material dispute of fact with respect to whether CGL 387 or Axiom endorsement AXI 114 applies.

Capitol expends much effort arguing that all of the claims in the Underlying Complaint are precluded by the exclusions contained in CGL 387 and that the claims in the Underlying Complaint fall outside of the definition of "assault or battery hazard" set forth in CGL 387.   The Court, however, need not consider whether the claims in the Underlying Action tend to show an occurrence covered by the Policy or whether the claims demonstrate that there is no possible coverage because the language of CGL 387 relieves Capitol of a duty to defend or indemnify the Insured Parties.   The Court concludes that the Insured Parties and the Threadgills have presented evidence that a material dispute of facts exists with respect to whether the endorsement CGL 387 applies to the Policy or whether endorsement AXI 114 instead governs.   Thus, Capitol has not satisfied its summary judgment burden of demonstrating that it is entitled to judgment as a matter of law in its favor on the coverage question.

The Insured Parties and the Threadgills present evidence that Capitol, without notice, unilaterally substituted CGL 387 for AXI 114 in the 2010 Policy, despite the fact that Capitol represented in its November 19, 2010, binder letter that form AXI 114 would apply.   [Doc. 36-1, ¶¶ 17-22].   The binder letter makes no mention of form CGL 387, but rather provides that "AXI 114 ASSAULT AND BATTERY COVERAGE ENDORSEMENT SUB-LIMIT OF LIABILITY" is an applicable endorsement.   [Doc. 36 at 26].   Furthermore, the non-movants present evidence that Capitol's substitution of form CGL 387 for AXI 114 is contrary to Capitol's course of dealing with the Insured Parties, because both the 2008 and 2009 policies included form AXI 114 and not

33

form CGL 387.   [Doc. 36-1, ¶¶ 17-22].   In addition, the non-movants present evidence that had

AIP known that Capitol unilaterally switched the forms and that CGL 387 applied to the Policy

instead of AXI 114, AIP would have recommended that the Insured Parties reject the coverage.

[Doc. 36-1, ¶ 27].

The Court concludes that the Insured Parties and the Threadgills have pointed to evidence

raising a material dispute of fact regarding the applicability of endorsement CGL 387 which

precludes a judgment as a matter of law in Capitol's favor on the question whether the terms of

CGL 387 relieve Capitol of its duties to defend and indemnify the Insured Parties.   *Cf. Deepwater

Invest., Ltd. v. Jackson Hold Ski Corp.*, 938 F.2d 1105, 1111 (10th Cir. 1991) (holding that a

material factual dispute precluded summary judgment because "[i]ssues such as . . . the terms of

the alleged contract are generally questions of fact to be resolved by the fact finder") (citation

omitted); *Eagle Well Serv. v. Cent. Power Sys. & Servs*, No. 08-2184, 2009 U.S. Dist. LEXIS

77122, at *4 (D. Kan. Aug. 28, 2009) (denying summary judgment in part because "the terms of

the contract are in dispute" and the disputed fact precludes summary judgment); *see also Fidelity

& Cas. Ins. Co. v. Wil-Freds, Inc.*, 496 N.E.2d 336, 340 (Ill. Ct. App. 1986) (denying summary

judgment in a declaratory action seeking a determination of insurance coverage because the parties

disputed the terms and conditions of the policy).   Thus, the Court will deny Capitol's Motion for

Summary Judgment in its favor on the question whether coverage is precluded under the terms of

CGL 387.

B.      Capitol Is Not Entitled to Summary Judgment on the Ground that the Terms of
        Endorsement AXI 114 Relieve Capitol of Its Duty to Defend.

Capitol also argues that it is entitled to summary judgment in its favor on the question of its

duty to defend and indemnify the Insured Parties even if Axiom form AXI 114 applies.

34

According to Capitol, the terms of endorsement AXI 114—like those of CGL 387—exclude all of the claims in the Underlying Complaint from coverage.

The "duty to indemnify is distinct from [the] duty to defend" and resolution whether a party has a duty to defend does not "necessarily depend on there being a duty to indemnify." *City of Albuquerque v. BPLW Architects & Eng'rs, Inc.*, 213 P.3d 1146, 1155 (N.M. Ct. App. 2009) (citation omitted). The duty to indemnify an insured must be determined based upon the facts ultimately decided in the litigation against the insured. *See Valley Improvement Ass'n v. U.S. Fidelity & Guar. Corp.*, 129 F.3d 1108, 1126 (10th Cir. 1997). In contrast, the "duty to defend arises out of the nature of the allegations in the complaint," *Miller v. Triad Adoption & Counseling Servs., Inc.*, 65 P.3d 1099, 1103 (N.M. Ct. App. 2003), and is determined "by comparing the factual allegations in the complaint with the insurance policy," *Lopez v. New Mexico Public School Insurance Authority*, 870 P.2d 745, 747 (N.M. 1994); *see Bernalillo County Deputy Sheriffs Ass'n v. County of Bernalillo*, 845 P.2d 789, 791 (N.M. 1992) (if a complaint "states facts that bring the case within the coverage of the policy," then the complaint triggers the duty to defend). Known, but unpleaded facts, may bring a claim within the coverage of the policy at the beginning of the litigation or at a later stage. *See Am. Gen. Fire & Cas. Co. v. Progressive Cas. Co.*, 799 P.2d 1113, 1116 (N.M. 1990). "If the allegations of the complaint or the alleged facts tend to show that an occurrence comes within the coverage of the policy, the insurer has a duty to defend regardless of the ultimate liability of the insured." *Miller*, 65 P.3d at 1103. An insurer, on the other hand, is not required to defend an underlying action when an insurer shows as a matter of law that all claims in the collateral action arise from an injury excluded by the insurance policy. *See Lopez*, 870 P.2d at 748.

Thus, for Capitol to be entitled to judgment in its favor on the question of coverage, not one

of the claims in the Underlying Complaint can fall within the Policy's coverage.   *See Guest v. Allstate Ins. Co.*, 244 P.3d 342, 348 (N.M. 2010) (when there are multiple causes of action, "the duty [to defend] continues until every covered claim is eliminated") (citation omitted).   Capitol contends that even if Axiom form AXI 114 applies, the expected or intended injury exclusion contained in the CGL Coverage Form, as modified by AXI 114 (0909), excludes coverage for all of the claims in the Underlying Complaint.   The Insured Parties and the Threadgills disagree, arguing that the exclusion for expected or intended injury does not exclude all of the claims in the Underlying Complaint.   According to the non-movants, the exclusion is inapplicable because it applies only to bodily injuries that were expected or intended, and the Underlying Complaint alleges claims against the Insured Parties—with the exception of TD's—for bodily injuries that were not expected or intended.   The non-movants acknowledge that the Underlying Complaint alleges that TD's "reasonably expected that its actions and omissions would result in the injury that Plaintiff suffered," [Doc. 3-1, ¶ 123], but maintain that there is no allegation that any of the other insured parties expected or intended the shooting.   [Doc. 42-1 at 4].   Because at least some of the claims alleged in the Underlying Complaint fall outside the expected or intended injury exclusion, the Insured Parties contend that Capitol has a duty to defend.

The CGL Coverage Form in the Policy provides as follows:   "This insurance does not apply to[] . . . '[b]odily injury' . . . expected or intended from the standpoint of the insured.   This exclusion does not apply to 'bodily injury' resulting from the use of reasonable force to protect persons or property."   [Doc. 42-1 at 12].   If version 0909 of Axiom form AXI 114 applies, this endorsement would amend the CGL Coverage Form by providing that, as in the CGL form, the insurance does not apply to "'[b]odily injury' or 'property damage' expected or intended from the standpoint of the insured," but also by adding that the "exclusion does not apply to 'bodily injury'

36

or 'property damage' included in the 'assault or battery hazard.'"   [Doc. 36-1 at 21].   Form AXI

114 (0909) defines "Assault or battery hazard" as "the use of reasonable force to protect persons or

property, including reasonable force to eject or exclude any person from the insured's premises or

restore order at the insured's premises."   [*Id.*].

If version 0707 of Axiom form AXI 114 applies, this endorsement would likewise provide

that it amends the expected or intended injury exclusion in the CGL Coverage Form by providing

that, as in the CGL form, the insurance does not apply to "'[b]odily injury' . . . expected or

intended from the standpoint of the insured," but by adding that the "exclusion does not apply to

'bodily injury' . . . included in the 'ASSAULT AND BATTERY HAZARD.'"   [Doc. 36-1 at 16].

Form AXI 114 (0707) further defines "Assault and battery hazard" as including "all 'bodily injury'

. . . resulting from the use of reasonable force to protect persons or property, including reasonable

force or violence used to eject or exclude any person from the insured's premises or restore order

at the insured's premises."   [*Id.*].

The Court agrees that the Underlying Complaint contains allegations that are not excluded

under the expected or intended injury exclusion contained in the CGL Coverage Form.   The

Court's conclusion remains unchanged regardless of whether the Court assumes that the CGL

Coverage Form was modified by version 0909 or 0707 of Axiom endorsement AXI 114.   Capitol

assumes that it is version 0909, and not version 0707, of Axiom form AXI 114 that modifies the

CGL Coverage Form.   It is not clear, however, which of the versions applies.[5]   The applicable

version, however, is not of consequence to the Insured Parties' argument in opposition to the

motion.   The Insured Parties contend only that the Underlying Compliant contains claims that

---

[5]   The November 19, 2010, binder letter indicates only that form AXI 114 is applicable but does
not specify whether Capitol was offering to include version 0909 or 0707 of that form.

were not expected or intended, and that the exclusion in the CGL Coverage Form for expected or intended injuries is inapplicable.   This argument does not turn on whether the modification to the CGL Coverage Form's exclusion contained in version 0909 or version 0707 applies.   Thus, for purposes of deciding whether the Underlying Complaint contains any claims that fall outside of the expected or intended injury exclusion, the Court need not address Capitol's assumption that version 0909 applies, but rather need only determine whether the Underlying Complaint contains claims that fall outside of the expected or intended injury exclusion.

While the Underlying Complaint alleges that TD's "reasonably expected" its actions would result in injury, it contains no similar allegations of expected or intended injury by NC Properties, LLC or HTR, LLC.   Rather, the Underlying Complaint contains allegations against NC Properties and HTR of negligence or other unintentional and unexpected conduct.   For example, the Underlying Complaint alleges that NC Properties, LLC, was negligent in failing to meet a duty of care to invitees and contractors, [Doc. 3-1, ¶¶ 72-74], and that NC Properties breached its duty of care because it failed to assess security needs, failed to provide security guards and implement security measures, failed to provide training and proper equipment to bouncers in dealing with violent or intoxicated patrons, failed to provide adequate lighting, failed to warn decedent of the dangerous condition it created, and failed to adopt and enforce safety procedures that would have prevented decedent's death.   [*Id.* ¶¶75(B)-(F); *id.* ¶¶ 43, 44, 48, 49].   Likewise, the Underlying Complaint alleges that NC Properties was negligent in entrusting its premises to TD's and that HTR was negligent in entrusting its liquor license to TDs, because NC Properties and HTR knew or should have known that, by virtue of the numerous reports and police dispatches, TD's was not operating in a safe and prudent manner.   [*Id.* ¶¶ 83, 104].   Because the Underlying Complaint contains these allegations of non-intentional conduct, Capitol cannot

38

establish that all of the claims in the Underlying Action arise from an injury excluded by the Policy.   *Cf. Lopez*, 870 P.2d at 748 (explaining that an insurer is not required to defend an underlying action when an insurer shows as a matter of law that all claims in the collateral action arise from an injury excluded by the insurance policy).   As the Court already has explained, to be entitled to judgment in its favor on the question of coverage, not one of the claims in the Underlying Complaint can fall within the Policy's coverage.   *See Guest*, 244 P.3d at 348 (citation omitted).   Capitol has not satisfied this showing and it therefore is not entitled to a judgment as a matter of law in its favor on the ground that the expected or intended injury exclusion, as modified by form AXI 114, relieves it of its coverage obligations.

The Court also denies Capitol's motion for judgment as a matter of law in its favor on a second, independent ground.   To the extent that the Underlying Complaint alleges that the Insured Parties expected or intended the injuries (*e.g.*, including the allegation that TD's "reasonably expected that its actions and omissions would result in the injury that Plaintiff suffered," [Doc. 3-1, ¶ 123]), the Court concludes that questions of fact nonetheless preclude summary judgment in Capitol's favor.   As a threshold matter, the Court holds that a question of fact exists with respect to which version of form AXI 114 applies.   The November 19, 2010, binder letter simply indicates that endorsement AXI 114 applies, but does not specify which version of the endorsement is applicable.   The language of each version of the AXI 114 endorsement differs.   A question of fact, therefore, exists with respect to the applicable policy language, the Court cannot conclude whether the allegations in the Underlying Complaint or the known but unpleaded facts trigger coverage.   *Cf. Deepwater Investments, Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1111 (10th Cir. 1991) (holding that material factual dispute precluded summary judgment because "[i]ssues such as whether a contract has been entered into and the terms of the alleged contract are

generally questions of fact to be resolved by the fact finder") (citation omitted); *Eagle Well Serv. v. Cent. Power Sys. & Servs*, No. 08-2184, 2009 U.S. Dist. LEXIS 77122, at *4 (D. Kan. Aug. 28, 2009) (denying summary judgment in part because "the terms of the contract are in dispute, specifically whether the contract includes [a particular provision,]" and the disputed fact precludes summary judgment); *see also Fidelity & Cas. Ins. Co. v. Wil-Freds, Inc.*, 496 N.E.2d 336, 340 (Ill. Ct. App. 1986) (denying summary judgment in a declaratory action seeking a determination of insurance coverage and holding that a question of fact existed where the insurance policy was missing because the parties disputed the terms and conditions of the policy and that factual dispute must be resolved before the court can declare what the rights of the parties are under the policy).

Moreover, even if the Court were to assume that version 0909 of Axiom form applies—as does Capitol for purposes of the Motion for Summary Judgment only [Doc. 39 at 6]—the Court nonetheless would deny Capitol's motion for judgment in its favor, because the Insured Parties and the Threadgills have presented evidence demonstrating that version 0909 is ambiguous and inconsistent with the Insured Parties' reasonable expectations.   This evidence raises a question of fact for trial and therefore precludes summary judgment in Capitol's favor.

It is a well settled rule of construction that the reasonable expectations of the insured should guide the court's analysis when construing an ambiguous insurance contract.   *See Federal Ins. Co. v. Century Fed. Sav. & Loan Ass'n*, 824 P.2d 302, 308-09 (N.M. 1992) ("Giving effect to the insured's reasonable expectations, in cases of policy ambiguity, is of course a well-settled approach to construing and applying language in insurance policies") (citations omitted); *Sanchez v. Herrera*, 783 P.2d 465, 469-70 (N.M. 1989) ("The reasonable expectations of the insured provide the criteria for examining an insurance contract on the basis both of the actual words used and of unresolved issues that the insurance company has an obligation to address."); *CC Housing*

*Corp. v. Ryder Truck Rental, Inc.*, 746 P.2d 1109, 1112 (N.M. 1987) ("The critical analysis should focus primarily on protecting the one for whose benefits premiums have been paid for insurance coverage, and construing the policies liberally in favor of the insured and strictly against the insurers."); *Ivy Nelson Grain Co. v. Commercial Union Ins. Co.*, 453 P.2d 587, 588 (N.M> 1969) ("[W]here there is ambiguity, the test is not what insurer intended its words to mean, but what a reasonable person in the position of the insured would understand them to mean.").   It is also well settled that a court will construe an ambiguous insurance contract in favor of an insured. *See King v. Travelers Insurance Co.*, 505 P.2d 1226, 1231 (N.M. 1973).

Applying these rules of construction, the Court concludes that the CGL Coverage Form, as modified by AXI 114 (0909), is ambiguous, and therefore must be construed in the Insured Parties' favor, consistent with their reasonable expectations.   The CGL Coverage Form provides that "[t]his insurance does not apply to[] . . .   '[b]odily injury' . . . expected or intended from the standpoint of the insured," but also indicates that the exclusion for expected or intended injuries "does not apply to 'bodily injury' *resulting from* the use of reasonable force to protect persons or property."   [Doc. 42-1 at 12 (emphasis added)].   Axiom form AXI 114 (0909) purports to grant additional assault and battery coverage at the cost of $24,167 (approximately 25 percent of the total annual premium) and replaces the expected or intended injury exclusion in the CGL Coverage Form.   [Doc. 36-1 at 21].   Form AXI 114 (0909) tracks the same language as the CGL Coverage Form by indicating that the insurance does not apply to expected or intended bodily injury, but amends the language in the CGL Coverage Form by providing that "th[e] exclusion [for expected or intended injuries] does not apply to 'bodily injury' . . . *included in* the 'assault or battery hazard,'" and by defining "assault or battery hazard" as "the use of reasonable force to protect persons or property, including reasonable force to eject or exclude any person from the

41

insured's premises or restore order at the insured's premises."   [*Id.* (emphasis added)].

While the CGL Coverage Form provides coverage for bodily injury "resulting from the use of reasonable force to protect persons or property," [Doc. 42-1 at 12], Capitol contends that form AXI 114 (0909), which does not contain the "resulting from" language in the CGL Coverage Form but instead uses the terms "included in," provides coverage only for the direct "use of reasonable force itself" and not for bodily injury indirectly resulting from the use of reasonable force.   [Doc. 39 at 5].  Capitol argues that under the language of form AXI 114 (0909), one cannot adopt the Insured Parties' interpretation of coverage by looking to the Underlying Complaint's allegations of force used by Joseph Threadgill and/or the other bouncers at TD's to eject Hancock from the premises and by concluding that the bodily injury sustained by Threadgill resulted from that use of reasonable force.   [*Id.* at 4-5].  Rather, according to Capitol, the "included in" language of AXI 114 (0909) requires one to look directly to the use of force used by Hancock—the person inflicting the bodily injury—to shoot and kill Threadgill.   [*Id.* at 5].  Because the Underlying Complaint does not allege any facts indicating that this force used by Hancock was reasonable, Capitol maintains that form AXI 114 (0909) excludes coverage.

The Insured Parties and the Threadgills contend that Capitol's narrow interpretation of AXI 114 (0909) is inconsistent with its language, because the form does not limit the coverage only to the use of reasonable force itself, but rather to "'bodily injury' . . . included in the 'assault or battery hazard,'" which hazard is defined as the "use of reasonable force to protect persons or property."   Moreover, the Insured Parties point out that, if the Court accepts Capitol's reading of AXI 114 (0909), the Insured Parties would have paid a substantial premium of $24,167 to narrow their coverage.  [Doc. 42-1 at 8].  According to the Insured Parties, the proper reading of form AXI 114 (0909) is to construe it, consistent with its terms, as providing coverage for bodily injury

"included in" the use of reasonable force.   [*Id.* at 6-7 ("At the very least, this raises a factual issue of whether Thomas Hancock's violence was 'included in' the efforts to eject him and restore order at the premises")].

The Court concludes that the language "included in" contained in AXI 114 (0909) is ambiguous.   Unlike the language "resulting from" contained in the CGL Coverage Form, the language "included in" does not clearly define the connection—causal or otherwise—between the bodily injury and its relation to the use of reasonable force.   Thus, the language is susceptible to multiple interpretations.   The plain language of form AXI 114 (0909) provides that the expected or intended injury exclusion does not apply to bodily injury "included in . . . the use of reasonable force to protect persons or property," but it is unclear precisely what "bodily injury" might be "included in" the use of reasonable force."   [Doc. 36-1 at 21].   The language itself is awkward and not capable of a single interpretation.

Moreover, the language of AXI 114 (0909) is also ambiguous when construed in conjunction with the Policy as a whole.   Form AXI 114—under Capitol's interpretation—actually limits the scope of the CGL Coverage Form rather than expands it, despite the fact that the Insured Parties paid an additional $24,167 to increase their assault and battery coverage.   Because the language of AXI 114 is ambiguous when read both in isolation and with the insurance Policy as a whole, the Court must look to the reasonable expectations of the Insured Parties in construing AXI 114 (0909).

The Insured Parties and the Threadgills have presented evidence regarding the Insured Parties' reasonable expectations.   The evidence indicates that liability coverage for assault and battery was an important feature of any liability policy for the Insured Parties, and that the Insured Parties' insurance broker AIP would not have placed a liability policy for them unless the policy

provided "meaningful" coverage for assault and battery incidents on their club premises.   [Doc. 36 at 10; Doc. 36-1, ¶ 6].   The Insured Parties and the Threadgills also have preferred evidence indicating that the quoted premium for the Policy covering the time period between November 22, 2010 to November 22, 2011, was $104,450, of which Capitol charged $24,167 for assault and battery coverage.   [Doc. 36 at 11-12].   This evidence indicates that the Insured Parties intended to purchase "meaningful" assault and battery coverage and that they paid $24,167, or almost one quarter of their total annual premium of $104,450, to secure this coverage.   Capitol has proffered no evidence to rebut the evidence of the Insured Parties' expectations.   The Court concludes that the evidence before the Court is sufficient to create a triable issue of fact regarding the Insured Parties' reasonable expectations and to withstand Capitol's motion for judgment in its favor as a matter of law on the question of coverage under form AXI 114 (0909).[6]

IV.   Motions to Supplement Response to Motion for Summary Judgment.

        The Insured Parties have filed two motions to supplement their response to the Motion for

---

[6]   Capitol does not contend that version 0707 of form AXI 114 applies.   The Court, therefore, need not decide whether version 0707 is ambiguous.   The Court notes, however, that while the language in form AXI 114 (0707) does not appear to limit the coverage contained in the CGL Coverage Form, it seemingly is coextensive with the coverage contained in the CGL Coverage Form.   While version 0707—like version 0909—provides that the expected or intended injury exclusion does not apply to "'bodily injury' included in the 'assault and battery hazard,'" version 0707—unlike 0909—defines "assault and battery hazard" as "all 'bodily injury *resulting from* the use of reasonable force to protect persons or property, including reasonable force or violence used to eject or exclude any person from the insured's premises or restore order at the insured's premises."   [Doc. 36-1 at 16 (emphasis added)].   The language "resulting from the use of reasonable force to protect persons or property" in version 0707, [*id.*], tracks the language "resulting from the use of reasonable force to protect persons or property" in the CGL Coverage Form, [Doc. 42-1 at 12].   Although version 0707 further defines "reasonable force to protect persons or property," as "including reasonable force or violence used to eject or exclude any person from the insured's premises or restore order at the insured's premises," [*id.*], and the CGL Coverage Form does not contain a similar explanation of what "reasonable force to protect persons or property" includes, this inclusionary explanation does not alter the scope of coverage.

Summary Judgment.   Capitol did not oppose the Defendants/Counterclaimants' Unopposed Motion to Supplement Response to Plaintiff/Counterdefendant Capitol Specialty's Motion for Summary Judgment [Doc. 38], but do oppose Defendants/Counterclaimants' Second Motion to Supplement Response to Plaintiff/Counterdefendant Capitol Specialty's Motion for Summary Judgment [Doc. 51].   In their motions to supplement, the Insured Parties seek to present evidence relevant to the intoxication exclusion contained in CGL 387 and to present evidence regarding the reasonableness of the force that TD's bouncers used to remove Hancock prior to the shooting. [Doc. 54 at 2, 6].   The Court already has decided the Motion for Summary Judgment without reference to this evidence.   The Court declined to consider whether the intoxication or other exclusions contained in form CGL 387 excluded coverage, because the Court held that a question of material fact regarding whether form CGL 387 applied precluded summary judgment in Capitol's favor.   The Court likewise did not consider evidence regarding the reasonableness of the force used to eject Hancock from the premises, because that evidence was not relevant to the Court's resolution of Capitol's motion.   Accordingly, the Court concludes that the Insured Parties' motions to supplement are moot and that they therefore should be denied as moot.

**IT IS THEREFORE HEREBY ORDERED** that the Motion and Memorandum in Support of Defendant Southwest Clubs, Inc., 6001, Inc. d/b/a TD'S North, NC Properties, LLC, and HTR, LLC's Motion to Stay Proceedings [Doc. 23] is hereby **DENIED**, the Insured Defendants' Motion for Leave to File Surreply in Opposition to Plaintiff/Counterdefendant Capitol's Motion for Summary Judgment and Memorandum in Support [Doc. 42] is hereby **GRANTED**, the Plaintiff/Counterdefendant Capitol's Motion for Summary Judgment [Doc. 31] is hereby **DENIED**, the Defendants/Counterclaimants' Unopposed Motion to Supplement Response to Plaintiff/Counterdefendant Capitol Specialty's Motion for Summary Judgment [Doc. 38] is

hereby **DENIED as moot**, and the Defendants/Counterclaimants' Second Motion to Supplement

Response to Plaintiff/Counterdefendant Capitol Specialty's Motion for Summary Judgment [Doc.

51] is hereby **DENIED as moot**.


DATED this 31st day of March 2014.


_____
   M. CHRISTINA ARMIJO
   Chief United States District Judge

46