UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

CAPITOL SPECIALTY INSURANCE
CORPORATION,

       Plaintiff,

v.                                                                                             Civ. No. 12-01299 MCA/LAM

SOUTHWEST CLUBS, INC.; 6001, INC.
d/b/a TD'S NORTH; NC PROPERTY LLC;
HTR LLC; PRISCILLA THREADGILL,
Individually and as Personal Representative
of the Wrongful Death Estate of JOSEPH
THREADGILL; DAVID THREADGILL
and DANIELLE THREADGILL,

       Defendants,

and

SOUTHWEST CLUBS, INC.; 6001, INC.
d/b/a TD'S NORTH; NC PROPERTY LLC;
HTR LLC,

       Counterclaimants,

v.

CAPITOL SPECIALTY INSURANCE
CORPORATION,

       Counter-Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendants/Counterclaimants Southwest Clubs, Inc. ("Southwest") , 6001, Inc. d/b/a/ TD's North ("TD's"), NC Property, LLC ("NC Property"), and HTR, LLC's ("HTR") Partially Opposed Motion to Stay Proceedings and Memorandum in

1

Support ("Motion to Stay") [Doc. 101]. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court grants the motion.

## BACKGROUND

Plaintiff Capitol Specialty Insurance Corporation ("Capitol") brought this declaratory judgment action seeking a declaration that it is not required, under a commercial general liability insurance policy, to defend or indemnify Defendants Southwest, TD's, NC Property, and HTR ("Insured Parties") for damages arising out of an underlying wrongful death litigation now pending in the Thirteenth Judicial District Court, County of Sandoval, State of New Mexico (the "Underlying Action"). [Doc. 32 ¶¶ 1-2, at 2]. The gravamen of the complaint filed in the Underlying Action is that Thomas Hancock, a patron of TD's, fatally shot Joseph Threadgill, an employee working as a bouncer for TD's.[1]

In its complaint for declaratory relief, Capitol names the Insured Parties as defendants. Capitol also names as defendants to this insurance coverage dispute the plaintiffs in the Underlying Action—namely, Priscilla Threadgill, in her individual capacity and in her capacity as the personal representative of the wrongful death estate of Joseph Threadgill, as well as David Threadgill and Danielle Threadgill (collectively, the "Threadgills"). [Doc. 13]. The Insured Parties filed a counterclaim against Capitol alleging a claim for declaratory relief as well as claims for bad faith, breach of fiduciary duty, and statutory violations. [Doc. 16].

The Insured Parties previously filed a motion to stay this action pending resolution of the Underlying Action, which Capitol opposed. [Doc. 23]. The Court entered a memorandum

---

[1] The underlying tort action is entitled *Priscilla Threadgill et al. v. Thomas Hancock et al.*, Thirteenth Judicial District Court, County of Sandoval, State of New Mexico, Case No. D-1329-CV-2012-02435. The plaintiffs in the Underlying Action sue defendants TD's, NC Property, HTR, and Thomas Hancock. [Doc. 13-2].

opinion and order denying that motion on March 31, 2014.  [Doc. 61].

Presently before the Court is the Insured Parties' second motion to stay this action pending resolution of the Underlying Action.  [Doc. 101].  The Insured Parties argue that although the Court previously declined to enter a stay, "developments in the underlying case now warrant staying this action to conserve the resources of the parties and the Court."  [*Id.* at 2].  Although Capitol objected to the Insured Parties' first motion for a stay, Capitol now asserts that a stay is appropriate.  [*Id.*].  Capitol filed a notice of concurrence, in which it states that, "[i]n light of recent developments, Plaintiff Capitol Specialty Insurance concurs with the [Insured Parties] that this action should be stayed pending resolution of the underlying Threadgill action."  [Doc. 102].

The only parties to this action that object to the entry of a stay are the Threadgills.  [Doc. 101 at 2; Doc. 106].

## **STANDARD**

It is well established that a district court has broad discretion to stay proceedings as an incident to its power to control its own docket.  *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *Clinton v. Jones*, 520 U.S. 681, 706-07 (1997); *Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1484 (10th Cir. 1983); *Petrella v. Brownback*, 980 F. Supp. 2d 1293, 1299 (D. Kan. 2013); *Hartford Cas. Ins. Co. v. Samuel Eng'g, Inc.*, No. 13-CV-0594-REB-KMT, 2014 WL 1224316, *2 (D. Colo. Mar. 25, 2014); *FDIC v. Renda*, No. 85-2216-O, 1987 WL 348635, *2 (D. Kan. Aug. 6, 1987).  Justice Cardozo articulated the parameters of this discretion in *Landis v. North American Co.*, explaining that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.  How this can best be done calls for the exercise of judgment, which must weigh competing interests and

maintain an even balance." 299 U.S. at 254-55 (citations omitted).  A district court may exercise its inherent power to control its docket by entering a stay of a federal proceeding in favor of another proceeding even if the parties and issues in the two proceedings are not identical. *See id.* at 254.  This rule applies "whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863-64 (9th Cir.1979)

The *Landis* Court cautioned that "the suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Id.* at 255.  In *Commodity Futures Trading Commission v. Chilcott Portfolio Management, Inc.*, the Tenth Circuit likewise explained that a discretionary motion for stay calls "for balancing the competing interests on both sides." 713 F.2d at 1484 (citation omitted).  "In particular, [the court held,] where a movant seeks relief that would delay court proceedings by other litigants he must make a strong showing of necessity because the relief would severely affect the rights of others." *Id.*

Consistent with the *Landis* Court's instruction to consider the competing interests of the parties and require a movant to make out a "clear case of hardship" if there is even a "fair possibility" that the stay will harm the other party, one of the factors courts consider in determining whether to enter a stay is the relative interests of, and any hardship to, the parties. *See Commodity Futures*, 713 F.2d at 1484 (citation omitted); *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962); *accord Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting *CMAX*, 300 F.2d at 268).  In addition, district courts also consider judicial economy, "measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be

expected to result from a stay." *CMAX*, 300 F.2d at 268; *accord Lockyer*, 398 F.3d at 1110 (quoting *CMAX*, 300 F.2d at 268); *see also CopyTele Inc. v. A.U. Optronics, Inc.*, No. C-13-0380 EMC, 2013 WL 3458162, \*3 (N.D. Cal. July 9, 2013) (noting that courts consider judicial economy, in addition to hardship to the parties, in deciding whether to grant a *Landis* stay); *cf. Landis*, 299 U.S. at 256 (considering, among other factors, that "in all likelihood [resolution of a parallel proceeding] will settle many [issues] and simplify them all").

The decision whether to grant a stay under a district court's inherent power to control its docket is within the court's discretion and is reviewed by the Tenth Circuit for an abuse of discretion. *See Commodity Futures*, 713 F.2d at 1484 (holding that "[t]he ruling on the stay involved an exercise of discretion, and [that the Tenth Circuit] focuse[s] on the question whether the appellants have carried the weighty burden of showing an abuse of discretion") (citation omitted). The proponent of the stay bears the burden of establishing its need. *See Clinton*, 520 U.S. at 808.[2]

## DISCUSSION

In deciding whether to enter a stay under the Court's inherent power to control its docket,

---

[2] While a district court has discretion to enter a stay under its inherent power to control its docket, the Supreme Court in *Brillhart v. Excess Insurance Company of America*, 316 U.S. 491 (1942), held that a district court also may stay an action arising under the Declaratory Judgment Act, provided that the factors set forth in *Brillhart* are satisfied. *See id.*; *see also State Farm Fire & Casualty Co. v. Mhoon*, 31 F.3d 979 (10th Cir. 1994). The parties assume that the standard articulated in *Brillhart* for declaratory judgment actions applies here. [Docs. 101, 106, 112]. The Court, however, does not evaluate the Motion to Stay under this doctrine. *See U.S. v. City of Las Cruces*, 289 F.3d 1170, 1181 (10th Cir. 2002) (holding that the more permissive discretionary standard for granting a stay set forth in *Brillhart* and *Mhoon* is applicable only when the plaintiff seeks a declaration of its rights with no request for coercive relief and citing *Safety Nat'l Cas. Corp. v. Bristol-Myers Squibb Co.*, 214 F.3d 562, 564 (5th Cir. 2000), for the proposition that the "broad *Brillhart* standard [is] inappropriate" in "a suit seeking coercive relief as well as declaratory relief"); *see also* Doc. 16 (setting forth counterclaimants' amended counterclaims for declaratory relief and their claims for bad faith, breach of fiduciary duty, and statutory violations).

the Court considers two factors: (1) the parties' competing interests; and (2) judicial economy. *See CopyTele*, 2013 WL 3458162, *3 (noting that courts consider judicial economy, in addition to hardship to the parties, in deciding whether to grant a *Landis* stay); *see supra* at 4.  The Court first considers judicial economy because it is this factor that sets the context for the Court's analysis of the parties' competing interests and any resulting hardship to the Threadgills.

The factor of judicial economy is "measured in terms of simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX*, 300 F.2d at 268; *see also Landis*, 299 U.S. at 256 (considering, among other factors, that "in all likelihood [resolution of a parallel proceeding] will settle many [issues] and simplify them all"); *Lockyer*, 398 F.3d at 1112 (considering, in addition to balance of hardships, whether "the prospect of narrowing the factual and legal issues in the other proceeding, justifies a stay"); *CopyTele*, 2013 WL 3458162, *3 (noting that the factor of judicial economy requires a court to consider whether awaiting the results of another proceeding would "simplify any issues, proof, and/or questions of law in the pending litigation"). Movants contend that the trial court in the Underlying Action has entered "several significant orders" narrowing the claims at issue, that these orders likewise narrow the scope of this insurance coverage dispute, and that the Court and parties can conserve resources and prevent unnecessary litigation by allowing the developments in the Underlying Action to streamline this case.

The developments in the Underlying Action include the court's decision to grant summary judgment to TD's on the *Delgado* claim (and the New Mexico Court of Appeals' denial of the interlocutory appeal of this dismissal), to grant summary judgment to NC Property and dismiss this entity from the case, to permit the Threadgills to amend their complaint to include the spoliation claim against TD's, to grant summary judgment to the defendants on joint and several liability, and

to deny HTR's motion for summary judgment on the dram shop and negligent entrustment claims. After these decisions, only the spoliation claim against TD's and the claims against HTR remain in the Underlying Action. Movants maintain that "because of the Threadgill court's rulings, . . . there is uncertainty as to which claims will ultimately be the subject of the dispute over the duty to defend" in this litigation. [Doc. 101 at 10]. The Court now will "not, for example, need to clarify the legal relations at issue to decide whether Capitol has a duty to defend or indemnify TD's North on the *Delgado* claim," [*id.* at 5], and the underlying court's dismissal of the claims against NC Property will have "a similar effect," [Doc. 112 at 3]. Movants conclude that this narrowing of the focus of the underlying case demonstrates that staying this action will prevent the parties and the Court from unnecessarily expending time, money, and judicial resources litigating coverage issues that may be moot. The Court finds movants' argument persuasive and holds that the factor of judicial economy weighs in favor of granting a stay.

The Court also holds that the factor of the competing interests of the parties weighs in favor of granting the Motion to Stay. The movants' stated interest in staying this litigation is the conservation of resources and the avoidance of litigating issues that may potentially be moot. This interest of conserving resources extends not only to the movants but also to the Threadgills. Against this interest, the Court must weigh the competing interest of the Threadgills and any hardship to the Threadgills. The Threadgills represent that their interest in opposing a stay is that they "desire a ruling in this matter to determine what coverage, if any[,] is available to them if the underlying matter prevails or it will be forced to pursue the Insureds' personally." [Doc. 106 at 4]. The sole prejudice that the Threadgills identify is that "the underlying action is proceeding" and "[t]he issue that substantially impacts the underlying case and the Threadgill's possibility of recovery is the amount of coverage they can recover if the suit is successful." [*Id.* at 5].

The Court holds that the Threadgills' stated interest of knowing, if they prevail in the Underlying Action, whether they will be able to collect the judgment with ease—because Capitol will indemnify the Insured Parties—or whether they will be "forced" to collect from the Insured Parties directly, is not sufficient to outweigh the interest of all the parties in avoiding litigation of potentially moot issues. First, the harm to the interest the Threadgills identify is not the type of prejudice contemplated by the Supreme Court in *Landis* or the Tenth Circuit in *Commodity Futures*. The reassurance that comes from knowing that a "deep pocket" is available is not sufficient, as a matter of law, to merit denial of a stay issued under the Court's inherent power to control its own docket. This is particularly true when *all* parties, as well as the Court, have a weighty countervailing interest in staying the case to conserve resources and avoid unnecessary expense.

Further, the Court concludes that any perceived inconvenience to the Threadgills arising out of a stay will be short lived. The Threadgills themselves assert that they have requested "an immediate trial setting in the underlying action" and that the Underlying Action "will proceed without delay." [Doc. 106 at 5]. Thus, because the duration of the stay of this coverage action is likely to be reasonable, this weighs in favor of prioritizing the parties' interest in conserving resources over the Threadgills' interest in a coverage decision. *Cf. Leyva*, 593 F.2d at 864 ("A [*Landis*] stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court.").

Finally, the Threadgills' stated interest in receiving a coverage decision is not sufficient to warrant a denial of the stay because—regardless of the Court's entry of a stay—the Court cannot decide Capitol's duty to indemnify until the Underlying Action is resolved. *See Valley Improvement Ass'n v. U.S. Fidelity & Guar. Corp.*, 129 F.3d 1108, 1126 (10th Cir. 1997) ("We

have held, as have other courts, that the duty to indemnify must be determined based on the facts as ultimately determined in the litigation against the insured.").   For the foregoing reasons, the Court holds that the interest of the parties in conserving resources and avoiding litigation of potentially moot issues outweighs any interest of the Threadgills in receiving a coverage decision.

## CONCLUSION

The factors of judicial economy and the relative interests and hardship of the parties weigh in favor of staying this case for the duration of the Underlying Action.   The Court anticipates that proceedings on the insurance coverage issues will resume in this Court once the underlying tort claims have been resolved.

**IT THEREFORE IS ORDERED** that the Insured Parties' Partially Opposed Motion to Stay Proceedings and Memorandum in Support ("Motion to Stay") [Doc. 101] is hereby **GRANTED**.

**IT FURTHER IS ORDERED** that the parties submit joint status reports every ninety (90) days regarding the progress of the Underlying Action.

**SO ORDERED** this 31st day of March, 2015.

_____
M. CHRISTINA ARMIJO
CHIEF UNITED STATES DISTRICT JUDGE